**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**MARK ANTHONY BURK**,

**Plaintiff,**

**v.**                                                  CIVIL NO. 14-1557 (GAG)

**MATT MORCHOWER,**

**Defendant.**

## OPINION AND ORDER

The Court revisits the above-captioned complaint arising from the damages Mark Anthony Burk ("Plaintiff") allegedly suffered as a result of being fraudulently induced into an agreement with entertainment producers to pitch his idea of a reality television program to national television channels. Plaintiff initially filed suit against Eric Paulen ("Paulen"), Matt Morchower ("Morchower"), and Bald Bull Entertainment ("BBE"), seeking redress for fraud in the formation of a contract, breach of contract, negligence, lack of good faith, and obstinacy.[1] (Docket No. 11-1.) In the Opinion and Order at Docket No. 37, the Court dismissed all claims against Paulen and BBE.[2] Morchower remains the sole defendant.

As an affirmative defense in Morchower's answer to Plaintiff's amended complaint, Morchower asks this Court to dismiss the cause of action against him, arguing that this Court

---

[1] In his amended complaint, Plaintiff claims that Defendants are liable for the damages he suffered when Defendants fraudulently induced him into forming an agreement to promote his television program on the false premise that they have extensive industry contacts and then subsequently failed to fulfill their obligations, in violation of Articles 1054, 1055, 1060, 1210, 1217, 1221, 1222, and 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, §§ 3024, 3108-109, 3375, 3404, 3408-409, and 5154. (Docket No. 11-1.)

[2] Paulen and BBE moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), where they argued that Plaintiff's amended complaint failed to state any claim upon which relief can be granted. (Docket No. 20.) The Court granted said motion. See Docket Nos. 37 and 73.

Civil No. 14-1557 (GAG)

cannot exercise personal jurisdiction over him.  (Docket No. 31 at 8-10.)  Presently before the court is Morchower's motion to dismiss Plaintiff's amended complaint pursuant to FED. R. CIV. P. 12(b)(2), in which he argues the court lacks personal jurisdiction.  (Docket No. 40.)  Plaintiff opposed the motion to dismiss.  (Docket No. 74.)

Morchower contends that he never entered into any agreement, contract, or obligation with Plaintiff in any way and the only contact he ever had with Plaintiff was by participating in a conference call at Paulen's request.  (Docket No. 40 at 8.)  During that call, Morchower contends that he merely gave Paulen feedback on the sizzle reel that he reviewed and told him that he believed it needed a voiceover.  Id. at 9.  Moreover, he claims that he never said anything about having an agent hired for Plaintiff, particularly because he never entered into any agreement with Plaintiff to participate or in any way involve himself in Plaintiff's program.  Id.  He further contends that he is not currently nor has he ever been a partner of Paulen with respect to the facts alleged in the complaint or in any other businesses or relationships.  Id.  Lastly, Morchower moves this Court for the imposition of sanctions against Plaintiff for filing this suit, including Morchower's reasons costs, expenses, and attorney's fees.  Id. at 10.

After reviewing the pleadings and pertinent law, the Court **GRANTS** Morchower's motion to dismiss at Docket No. 40.

## I.        Relevant Factual and Procedural Background

Plaintiff is a former professional golf player who succumbed to homelessness after falling on hard times both personally and professionally.  (Docket No. 11-1 ¶ 10.)  Prior to the facts comprising this case, Plaintiff participated in a documentary style television program, titled "Pipe Dream," which chronicled his recovery from homelessness through the help of golf and aired in

2

Civil No. 14-1557 (GAG)

1    January, 2011.  (Docket No. 11-1 ¶ 11.)  A year later, on or about January, 2012, Plaintiff traveled

2    to Puerto Rico to participate in a talk with La Fondita de Jesús, a local non-profit entity that is

3    dedicated to provide food and shelter to homeless individuals in Puerto Rico.[3]  Id. ¶ 12.  By the

4    end of 2012, Plaintiff and Zayas began to film a "sizzle reel" to promote and attract interest in

5    Plaintiff's story to eventually obtain an agreement to produce a television program on the matter.

6    Id. ¶ 16.  In March, 2013, Zayas completed the sizzle reel.  (Id.)  Around April, 2013, Plaintiff

7    began searching for executive producers with television network contacts that would facilitate and

8    better ensure the possibility of obtaining an agreement with a network to create the program.  Id. ¶

9    17.  Plaintiff contacted Paulen, President of BBE, to inquire into whether he was interested in

10    being an executive producer of the project because Paulen advertised himself as having ample

11    experience in the field of entertainment programing.  Id. ¶ 18.  Specifically, Paulen stated that he

12    had been part of multiple sports programming events, which Plaintiff understood to be helpful to

13    fulfill his goal of obtaining a network program.  Id.  When contacting Paulen, Plaintiff suggested

14    that Paulen view his completed sizzle reel.  Id. ¶ 19.

15        Thereafter, on April 18, 2013, Paulen told Plaintiff that he had reviewed the sizzle reel and

16    that he was going to speak with his partner, whose name he did not disclose, about whether they

17    would agree to have BBE produce the program.[4]  Id. ¶ 20.

18

---

19      [3] During that time, Plaintiff started to develop a television program that would succeed "Pipe Dream."

20    Id. ¶ 13.  Plaintiff met Arturo Díaz ("Díaz"), who began to assist him in the development of the program and
provided Plaintiff with financial assistance during the development.  Id. ¶ 14.  Plaintiff also met Miguel Zayas
Garcia ("Zayas"), who is the owner and President of a company dedicated to, among other things, the production

21    of video footage.  Id. ¶ 15.

22      [4] Around the beginning of May, 2013, Paulen traveled to Puerto Rico to meet with Plaintiff and Díaz.
(Docket No. 11-1 ¶ 21.)  In this meeting, Paulen told both of them that he was an executive producer of the
Travel Channel program "Ghost Adventures" and that he was friends with the president of that channel.  Id.

23                               3

24

Civil No. 14-1557 (GAG)

Around the beginning of July, 2013, Plaintiff, Paulen, Zayas, and Rivera participated in a conference call in which Zayas asked Paulen if he was capable of getting the program on a television network. (Docket No. 11-1 ¶ 25.)  Shortly thereafter, Paulen spoke to Plaintiff and informed him that he was disappointed with the reel and that he would re-edit it to his liking. (Docket No. 11-1 ¶ 31.)  Plaintiff and Zayas then sent all of the original footage to Paulen in the month of January, 2014. Id.  On or about January 20, 2014, Díaz called Paulen to inquire as to when the new sizzle reel would be ready and Paulen said it would be ready by February 1, 2014. Id. ¶ 33.  During that conversation, Díaz asked Paulen if he was committed to the project and Paulen answered affirmatively. Id.

Nearing the end of February, 2014, Paulen wrote to Díaz and informed him that the new reel would be ready by March 1, 2014 and that he wished to travel to Puerto Rico to evaluate the capabilities of Zayas and his company, with his expenses to be covered by Díaz. Id. ¶ 37.  Two days before arriving in Puerto Rico, Paulen revealed the name of his partner to be Morchower. Id. ¶ 38.  Thereafter, while in Puerto Rico, Paulen met with Plaintiff, Díaz, and Zayas to play the new sizzle reel, and Díaz was satisfied with the product. Id. ¶ 39.  Further, Paulen told them that a network could be paying upwards of $200,000.00 per episode for the program, and considering that they had previously settled on creating a ten-episode program, the deal was worth $2,000,000.00.  Id.  Paulen then stated that he was going to present the reel to Morchower and confer with him the next steps. Id. ¶ 40.

After reviewing the reel, Morchower informed Paulen that he needed to add a voiceover, which Plaintiff promptly did. (Docket No. 11-1 ¶ 41.)  On or about April 1, 2014, Plaintiff spoke directly with Morchower for the first time, during which Morchower told him that they had hired

4

**Civil No. 14-1557 (GAG)**

1
2
3

an agent to "shop the reel" and that agent was engaging all potential networks, but the Travel Channel was not one of the choices at that point.  Id.  However, Plaintiff had never sought out an agent nor agreed to have an agent or manager for this project.[5]  Id. ¶ 42.

4
5
6
7
8
9
10
11

In early May, 2014, Paulen spoke with Plaintiff and told him that they would likely have to bring another producer into the project, and, as such, Plaintiff could no longer be considered a producer of the program; rather, he would be credited as a co-producer.  (Docket No. 11-1 ¶¶ 50-51.)  In that same conversation, Plaintiff asked Paulen about Zayas's roll in the project and Paulen responded that Zayas was no longer a member of the team and would appreciate if Plaintiff did not bring his name up again.  Id. ¶ 52.  By July, 2014, Plaintiff did not hear back from Paulen regarding any new shopping of the sizzle real.  (Docket No. 11-1 ¶¶ 53-55.)  Up until that time, Paulen had done nothing to promote the project other than meet with Greenberg one time.  Id. ¶ 55.

12
13
14
15

Plaintiff then filed this suit, claiming that Paulen, his company BBE, and Morchower fraudulently induced him into forming an agreement to promote his television program on the false premise that they have extensive industry contacts and then subsequently failed to fulfill their end of the bargain.  (Docket No. 11-1.)

16
17
18

19
20
21
22

_____

[5] At the end of March, 2014, Díaz decided to no longer be a part of the production team because he became skeptical of Paulen's access to the networks.  Id. ¶ 43.  As a result, Plaintiff's economic situation was greatly affected.  Id. ¶ 44.  Further, up to that point in time, Paulen had apparently not contacted any person at any television network to get the program produced.  Id. ¶ 45.  Plaintiff had entrusted Paulen exclusively with the task of reaching an agreement with a network because of the representations he had made to Plaintiff regarding his contacts in the television industry.  Id. ¶ 46.  It had begun to seem that Paulen neither had any intention of pitching the program to a network nor did he have the contacts and experience that he represented to Plaintiff.  Id.

23
24

Civil No. 14-1557 (GAG)

## II.      Standard of Review

"Where a district court's personal jurisdiction is contested, plaintiff[s] ultimately bear[] the burden of persuading the court that jurisdiction exists."     Negron-Torres v. Verizon Communications, Inc., 478 F.3d 19, 23 (1st Cir. 2001) (internal quotation marks omitted) (quoting Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).  Where the Court refrains from holding an evidentiary hearing, it applies the *prima facie* standard, under which the Court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to person jurisdiction."  Negron-Torres, 478 F.3d at 23 (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).  "However, [t]he prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. . . .   In other words, [t]he plaintiff must go beyond the pleadings and make affirmative proof."   Id. (internal quotation marks omitted).  The plaintiff's evidence is assumed to be true and construed in the light most favorable to the plaintiff.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).

## III.      Discussion

It is Plaintiff's burden to establish the Court's personal jurisdiction over any party, the burden is on Plaintiff to satisfy under both Puerto Rico's long-arm statute and the Due Process Clause of the United States Constitution.  See Negron-Torres, 478 F.3d at 24; United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  As Puerto Rico's long-arm statute reaches to the full extent that the Constitution allows, the court need only focus on the constitutional standards.  See Negron-Torres, 478 F.3d at 24.

6

Civil No. 14-1557 (GAG)

1    Under the Due Process Clause, the plaintiff has the burden of proving the existence of a

2  court's specific or general jurisdiction over a defendant. Id. "[A] defendant who has maintained a

3  continuous and systematic linkage with the forum state brings himself within the general

4  jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the

5  defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d

6  284, 288 (1st Cir. 1999) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

7  414 (1984)).  In the absence of such a continuous and systematic linkage to the forum, a Court may

8  still hear a case  pursuant to its specific jurisdiction "where the cause of action arises directly out

9  of, or relates to, the defendant's forum-based contacts." Negron-Torres, 478 F.3d at 24; see also

10 Helicopteros, 466 U.S. at 414.  Because Morchower's contacts with Puerto Rico appear to be

11 limited, and certainly not continuous and systematic, the court will analyze his arguments under

12 the specific jurisdiction test.

13    To determine whether a Court has specific personal jurisdiction over a defendant, it must

14 engage in a three-part inquiry, determining whether: (1) the claim underlying the litigation directly

15 relates to or arises out of the defendant's contacts with the forum; (2) those contacts constitute

16 purposeful availment of the benefits and protections afforded by the forum's laws; and (3) if the

17 plaintiff's case clears the first two hurdles, the Court analyzes the overall reasonableness of the

18 exercise of jurisdiction in light of the principles of fundamental fairness. Phillips Exeter, 196 F.3d

19 at 288; see Negron-Torres, 478 F.3d at 24.  "An affirmative finding on each of the three elements

20 of the test is required to support a finding of specific jurisdiction." Phillips Exeter, 196 F.3d at

21 288.

22

23                                                7

24

Civil No. 14-1557 (GAG)

1    In analyzing the relatedness prong of this test, causation is central.  Negron-Torres, 478

2    F.3d at 24.  The First Circuit has emphasized that:

3
> [t]he relatedness requirement is not an open door; it is closely read, and it requires a
4    showing of a material connection.  This court steadfastly reject[s] the exercise of
      personal jurisdiction whenever the connection between the cause of action and the
5    defendant's forum-state contacts seems attenuated and indirect. . . .  A broad 'but-
      for' argument is generally insufficient.  Because 'but for' events can be very
6    remote, . . . due process demands something like a 'proximate cause' nexus.

7    Id. at 25 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).  Such a nexus

8    requires the claim to "arise out of, or be related to, the defendant's in-forum activities," such that

9    there is a demonstrable link between those in-forum activities and the plaintiff's injuries.  Mass.

10   Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).

11   As such, the Court must approach this inquiry with specific and discrete analyses when the

12   plaintiff asserts a contract claim and when he asserts a tort claim.  Id.  With respect to a contract

13   claim, the "stereotypical inquiry tends to ask whether the defendant's forum-based activities are

14   instrumental in the formation of the contract" or in its breach.  Id. (citing Hahn v. Vermont Law

15   Sch., 698 F.2d 48, 51 (1st Cir. 1983)); Phillips Exeter Acad., 196 F.3d at 289.  With respect to a

16   tort claim, the Court will "look to whether the plaintiff has established cause in fact (i.e., the injury

17   would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the

18   defendant's in-state conduct gave birth to the cause of action).'"  Mass. Sch. of Law, 142 F.3d at

19   35 (citing United Elec., 960 F.2d at 1089); Phillips Exeter Acad., 196 F.3d at 289.

20   In his opposition to the motion to dismiss, Plaintiff argues that Morchower's activities in

21   Puerto Rico were in fact "instrumental in the formation, or breach of the parties' contract."

22   (Docket No. 74 at 6.)   The activities Plaintiff references is Morchower's participation in a

23                                                8

24

Civil No. 14-1557 (GAG)

conference call with Plaintiff and Paulen, and the feedback he gave on Plaintiff's sizzle reel.  Id.
Plaintiff contends that, taking into consideration the totality of all well-pleaded allegations in the
Complaint, the Court can reasonably find that Morchower's participation was more than just
feedback, considering he took affirmative steps directed at the formation of the contractual
relationship. Id.

    With respect to the inquiry into whether Morchower's contacts with Puerto Rico were
instrumental in the formation of a contract or breach thereof, in his complaint, Plaintiff alleges that
Paulen unilaterally indicated that he was working with a "partner" throughout the relevant time
period and that Plaintiff only spoke with Morchower once on a conference call with him and
Paulen. (Docket No. 11-1 ¶¶ 41-42.)

    As such, the Court finds that Morchower's contacts with Puerto Rico cannot be considered
instrumental in the formation of a contract because, at the very least, there is no alleged consent to
a contractual relationship between Plaintiff and Morchower.  Mere consent between Plaintiff and
Paulen does not translate to consent between Morchower and Plaintiff.  With respect to whether
Morchower's contacts with Puerto Rico could be regarded as the proximate cause of Plaintiff's
injuries, the Court finds that Plaintiff has failed to allege any duty on Morchower's part and
subsequent breach thereof can imputed to Morchower.  Plaintiff does not allege that Morchower
reached out to Plaintiff in any way, that he had any duty to him, or that any Morchower caused his
injuries in anyway.  Lastly, with respect to Plaintiff's dolo claim, Plaintiff has failed to allege any
intentional deceit and any other facts attributable to Morchower that could even remotely relate to
such a cause of action.  Plaintiff has merely alleged that Paulen indicated that he had a partner he

9

**Civil No. 14-1557 (GAG)**

was working with and that Morchower participated in one conference call and made some suggestions to Paulen at one point about the sizzle reel.

To further bolster the Court's conclusion, it is notable to mention that the First Circuit has recognized that there is a "natural blurring of the relatedness and purposeful availment inquiries in cases [like this one] in which the alleged facts are less tangible than physical presence." Phillips Exeter Academy, 196 F.3d at 289. "In such circumstances, an inquiring court must determine the extent to which the defendant directed out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Id. (citing Mass. Sch. of Law, 142 F.3d at 36). Unlike with Paulen, Plaintiff does not allege that Morchower ever made contact with Plaintiff nor did he come to Puerto Rico to discuss business. As such, it bears noting that Plaintiff has failed to allege a single fact that evidences any purposeful availment on part of Morchower of Puerto Rico's benefits.

Therefore, because an affirmative finding on each element is required to exercise jurisdiction and Plaintiff has failed to show the relatedness requirement, the Court need not go further as to the remaining elements.

**IV.     Conclusion**

Accordingly, for the reasons articulated above, the Court **GRANTS** Morchower's Motion to Dismiss for lack of personal jurisdiction, thereby **DISMISSING** all claims and causes of action against him without prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI

10